Both the counsel in this case and the one counsel in the next case for waiting so long after our first set of oral arguments. The next case we have today is number 20-3158, United States v. Taylor. Ms. Pietropalo and Ms. Irwin. Good morning. May it please the Court. My name is Renee Pietropalo. I represent Appellant Donte Taylor. Welcome back. Thank you. It's nice to be back. With the Court's permission, I'd like to reserve three minutes for ruddle. That's fine. The parties agree the colloquy to determine whether Mr. Taylor's intended waiver of counsel was knowing was incomplete. But let's just cut to the chase here if we can. Is there an ability for a court to say, you know, if somebody is acting, making claims that are just so wild and crazy that there is no way they can be dealt with, like I'm not a U.S. citizen, you have no jurisdiction over me, that type of thing. What can a court do in that case? Right, Your Honor. In addition to or other than what it did here? The Court has, in terms of the I have, I'm not a citizen, you have no jurisdiction. That's a typical sovereign citizen argument. I think the Court is probably familiar having seen that before. Once the Court determined that Mr. Taylor was competent, it had the obligation to then go down through the Pepper's colloquy that this Court articulated and determine whether knowing the risks of waiving counsel and proceeding on a, I think we can agree, frivolous claim, he willingly waived his right to counsel and was going in with his eyes wide open. But you didn't object on that. You didn't raise an appeal on that basis. You said they based it on his lack of understanding of the law. Right. The argument has consistently been that Mr. or that the Court began the inquiry and was immediately derailed from the proper inquiry by its focus on the merits of the argument that Mr. Taylor wanted to advance. Is that really a focus on the merits or isn't this, I mean, if I understand it, Pepper sets out a three-step framework. And nobody's disagreeing on the first and the third step. It's all focused on knowing and voluntary. That second step in the Pepper's framework, right? Correct. Okay. So if a judge sees a series of pro se filings, comes into court, and sees that the person is persisting in that, sees that when the court's ready to take a break and calls for a recess, is told, wait, wait, I want a ruling on my motion to dismiss because you have no jurisdiction. I mean, is there a point at which a district court is entitled to say, not as a matter of I'm looking at the substance and whether you're learned in the law or not, but is entitled to say these legal positions are utterly frivolous and you are determined to press them and determined to press them in a way that is disruptive and, therefore, I don't have to go through the rest of the Pepper stuff, all those questions, because you cannot be trusted to be in the courtroom managing this defense because you're disruptive and being utterly frivolous. Now, that's my summary of sort of like maybe from Judge Sircone's perspective what's happening. What's wrong with a district court judge deciding that? What prevents a district court judge from saying that based on what he or she is looking at in the courtroom and in the course of pretrial filings? Sure. I have two responses to that, Your Honor. The first is just a matter of law. Feretta doesn't authorize an anticipatory ruling that the defendant will not be able to follow the rules or be disruptive. That's like saying to a criminal defendant, you look like trouble and we're going to try you in absentia. Hold on. Hold on. Let's stick on that. You look like trouble. This is not you look like trouble. It's you're doing it now in the courtroom. You did it before you got to the courtroom and now we're in the courtroom and you're still doing it. You're doing it right now in front of me. It's the legal position that the defender's office is taking is no matter what a person does in the courtroom, no matter what they've done before they got there in connection with that, you're required to bring in 100 to 120 citizens, take them out of their lives, bring them in, pick a jury, seat 14 of them or more if you need more alternates, and then have all the court staff and the judge and the lawyers wait until the behavior, which you saw before, emerges again and then you can do something. Well, okay. First, with respect to Feretta, Feretta actually anticipates it's going to be possible that a defendant could become disruptive during trial. It contemplates terminating self-representation by a defendant who engages in serious and obstructionist misconduct, citing Illinois Allen and also citing a D.C. Circuit case called Doherty. Doherty is instructive because the court there addresses this very concern, and it says the mere possibility that defendant might be disruptive is not reason to preemptively deny him the right to represent himself. Your legal position is you do have to do all those things. No matter what the guy has done in the hearing before you, you have to do all that other stuff, bring all the people in, seat the jury, and then have him do it again, and then you can act. We're actually not there yet. What Mr. Taylor did was advance what we all agree was a frivolous legal position in a pleading, right? Then he gets to court, and he wants to articulate that position in a pleading. I'm sorry, orally. The fact that you are articulating a frivolous legal argument is not disruptive conduct. Now you're arguing something different, and I'm happy to discuss that with you. I've got to let my colleagues ask questions too, but I have a question that I'm putting to you. As a legal matter, is the position you're taking, no matter what the guy does in the courtroom, no matter what he says, no matter how he behaves, no matter what kinds of filings he's put in before, you can't do anything before trial. You've got to call a trial. You've got to seat the jury. You've got to have it happen in the courtroom, in a trial, because that's what Ferretta requires. There's no discretion. There's no ability, because otherwise it's all anticipatory, and Ferretta says you can't do that. Is that the legal position? I don't think we're there, Your Honor, because the district court judge in this case erred before he ever got there. He didn't conduct a colloquy to determine whether the defendant was knowing. It was probably going to do that. He was probably going to embark upon that, but it was short-circuited with Mr. Taylor's claims of, you know, the United States isn't a country, and I want a habeas corpus ruling on jurisdiction. There was no habeas corpus there. And the judge is an experienced trial judge, is saying, I know where this is going. You're going to try to upend the proceeding. And Ferretta did say it's not a license to abuse the dignity of the courtroom. And what Ferretta also said, though, Your Honor, was that you warn the defendant, and if the defendant has knowingly waived his right to counsel, and you explain to him, you don't know the rules, your argument is meritless, you're better off with a lawyer who knows the rules, are your eyes open, and you persist and say, yes, I want to continue, you have the right. We have to honor that right, even if it's to the defendant's detriment. And I understand Your Honor's point is about possible disruption to the court, but Ferretta contemplates that you warn the defendant ahead of time the consequences of disruptive behavior, and you appoint standby counsel should that happen. You can't preemptively determine, I think he's going to be disruptive. So to be clear, your argument is you can't make a judgment before trial. You can't make a judgment before trial. No district judge, no matter what the behavior is in the courtroom, can make a judgment before trial. But we don't have to go. We don't have to take the time of the U.S. citizenry.  Because what I'm witnessing right now tells me you're going to upend the proceedings and you're not going to be permitted to do that. Doesn't all the behavior in the world, the craziest antics in the world, wouldn't matter. You've got to go to trial. It sounds like that's what you're saying Ferretta demands. I'm not aware of any case holding that you can preemptively make this determination. This record wouldn't support that determination. I say that because, Your Honor, Mr. Taylor was advancing a frivolous argument, but he wasn't behaving in a disruptive and disorderly way. Well, it might be viewed as disruptive and disorderly if the court says, you know what, I need to think about this. I'm taking a recess. Wait, stop. Mr. Sircone, he didn't call me on that occasion, but he did Mr. Sircone him once. I want a ruling on my motion. You have no jurisdiction over me. And let me just ask you, what is the United States? Some people might say that that's disruptive. Some people might say that that is obstreperous, that that is disrespectful and that it is also utterly and completely frivolous and that it is happening right in front of the judge. And so it's not like merely anticipatory this might happen. No, I'm watching it happen. Why can't he make a judgment on what's in front of his face? If you go further in the record, Mr. Taylor's conduct, and again, when we're talking about whether the waiver is knowing, we have to stop at a certain point, so I realize I'm going further down the record than I should. But a few pages down the line, Judge Sircone makes his ruling, and he says, you cannot represent yourself. I'm not letting you make these frivolous arguments. That's it. When they turned to the suppression motion, Mr. Taylor didn't continue to advance this jurisdictional theory of his. He turned immediately to reasonable suspicion, probable cause, and the witnesses that he wanted called on his behalf. So there's really no support in the record for this notion that he was going to be disruptive throughout. He made a threshold. When you say there's no support in the record, we've just cited the support that's in the record. It sounds like your argument now is there's not enough, that this was premature because they're just, as you said earlier, there may be some evidence, but it's not enough to support the step that Judge Sircone took. Am I putting words in your mouth, or is that the position? My position is the judge never undertook the proper inquiry about whether Mr. Taylor was going into this with his eyes open, knowing the risks, and choosing to represent himself, notwithstanding that his defense was an absurd defense. The court in Peppers also dealt with a person who was raising an absurd defense or a baseless defense. I'm sorry, I'm getting my cases confused. The court in Peppers dealt with a defendant who wasn't able or didn't know the law, and the court said you can't represent yourself because you just don't know the law. We're in exactly that scenario here. I've cited cases in my briefs from Seventh and Ninth Circuit, I believe, where the defendant, like thousands of defendants across the country, raised a sovereign citizen defense. Mr. Taylor was raising it as a threshold jurisdictional question. There's no indication he would have continued that theory at trial, but those defendants in the cases cited in my briefs, Neal and Johnson, they did raise that defense, and the court said you have the right to go down in flames. Now had those defendants acted in an obstructionist, disruptive, unruly way at trial, the court would have been well within its rights to terminate self-representation. But the conduct that constitutes serious obstructive behavior isn't filing a frivolous motion or making a frivolous argument. I think a lot of us would be in trouble if that were the case. Rather, the prior case that the government mentioned, the defendant was showing signs and making active threats to the jury, a juror, during his argument, flouting and refusing to follow the court's directions, even when he represented that he would follow those directions. One quick question. Why so much would you say that if this happened at trial, the court could terminate self-representation, but not before trial? You can't make an anticipatory ruling that someone is not going to follow the rules. If you warn the defendant of the consequences of misbehavior, then you can terminate because you, the defendant, have then waived your right to represent yourself through your misconduct. In those situations, the court contemplates appointing standby counsel who can step in so we're avoiding any disruption of the court's calendar and of the juror's schedules. That's actually not what happened in this case. The court didn't undertake the knowing and voluntary inquiry that's demanded and skipped straight to the merits of your defense are absurd. How about a district court, an experienced district court judge's understanding of the inevitability of what is going to happen here? But none of us can tell the future, Your Honor. I mean, that's the problem. But you have an experienced judge who's had these kinds of cases over and over again. Two days in, you have to appoint standby counsel. Judge Saccone actually said himself he wasn't prepared to deal with this question, so I don't think that we can rely on his experience. Yes, I'm sure he's dealt with, quote, unquote, difficult defendants, right? I mean, he's here sympathizing with trial attorney. But that doesn't relieve him of his obligation, which is to warn the defendant. And Judge Ambrose authored an opinion in Jones, a 2006 opinion, and made very clear you warn the defendant there are rules that apply. You don't know the rules. You're probably going to be at a disadvantage because you don't know the rules. You're better off with a lawyer. And if the defendant says – Well, didn't he say those things? No, he – I mean, are you saying that if you don't touch every – if you don't touch all 13 of those bases, then you're out? Fourteen. Fourteen, excuse me. Right. I think Jones said it's got to be the relevant ones, obviously. Right. But the most significant ones – the court explained that the most significant – the minimum requirements were the ones that were missing. For example, the court never indicated the penalty. Mr. Taylor was a career offender subject to 360 months to life. He was subject to a 10-year mandatory minimum. So if the issue is you're not going to be able to restrain yourself from making frivolous, meaningless argument in the courtroom, if that's the issue, does the court have to say, wait, wait, I have to tell you what your maximum penalties are? That's what Peppers requires, you think? If the judge – if it's in the courtroom happening at trial, would you say the judge still has to say what the maximum penalties are? I think that our point of disagreement is in our interpretation of what was going on in the courtroom. Mr. Taylor was not acting unruly or disruptive. At all times, it was good manners. You're right. We have a problem here, Ms. Bietefeld, because you're shifting from my hypothetical into these facts. And I'm giving you a hypothetical because what it sounds like you're saying is as a legal matter – forget the facts. As a legal matter, you've got to say everything that Peppers says. And if you don't, you have failed, and you can't do – you can't withdraw that right to self-representation. We're not answering your question. We know that if the court grants self-representation, it does have to go through all of the subjects that are required. We know that from Jones and Peppers. The person could have an air horn come into the court naked, running around, blowing that, and the court couldn't say, stop, you can no longer represent yourself. The court would have to say, I have 14 questions to go through with you. I don't think we even need to call them the 14 questions that are all required. I think we all agree that – Then you say the right has been outweighed, basically, at that point. Right. There is absolutely a scenario in which a defendant – you could start the colloquy and the defendant could, for example, refuse to even answer, yes, I want to represent myself. He says it, but then during the colloquy – Takes up a chair and throws it and – Right. You don't have to get through the whole colloquy to determine he's not knowingly waiving his right. Right? You could also not get through the colloquy if, say, you're explaining the penalties and the defendant makes clear he has no understanding of what a mandatory minimum is. You can stop right there and say, he can't knowingly waive his right to counsel. That's not what happened here. So then what it comes down to is, yeah, what happened here and how bad was it? Right? What happened here was Mr. Taylor wanted to represent himself, and the judge, even though Peppers requires a level of patience from district court judges, the judge cut off all inquiry into the knowingness of the waiver and instead focused on – he understood there was a distinction between competence to proceed and whether he could be effective counsel. And at that moment he got distracted by whether Mr. Taylor could be effective as his own counsel. Well, can't you read this as not whether he could be effective as his own counsel, but can't you read this as, in the judge's own words, I'm not going to allow you to turn this proceeding upside down? In other words, it's not a question of whether you're learned in the law or not. It's a question of whether you can be trusted not to try to turn this into a circus with your nonsense sovereign citizen arguments. I hear you, Your Honor. He says at appendix pages 64 and 65, you're not going to represent yourself. Your arguments make no sense. They're convoluted. They're a waste of time. His decision is the merits of your arguments are worthless, so I'm not going to let you make those arguments. But that's the defendant's. I think that may be a good segue to hear from Ms. Irwin, then we'll get you back on the level. Of course. Thank you, Your Honor. Also welcome back. Thank you. Thank you. And I say segue because if there was one thing, you better announce your name first. I apologize, and then I'll ask my question. Laura Irwin from the U.S. Attorney's Office on behalf of the government. Thank you. Sorry. Ferreira makes pretty clear that you don't look to somebody's understanding of the law. You look to, you know, a host of factors, and Judge Rendell's opinion, which goes from the bench book, talks about those in peppers. So if you are going, if a judge is saying you don't understand the law, that's not going to do it in terms of what needs to be done to find out if somebody is intentionally making a decision to represent himself and forego having an attorney. If I understand your question correctly, Your Honor, our position is that if a court did that, that would be incorrect. But in this case, the record itself reveals that the district court, as Ms. Petropavlov agrees, you can get to a point where you don't have to go through the entire colloquy if a court's able to determine that a defendant is not genuinely able to understand the consequences of and the risks of going forward. And in this case, the record demonstrates that Mr. Taylor was unable to follow rules, unable to follow instructions. I don't believe it was to the point that he was disruptive in some of the sentences that we see, like in Illinois v. Allen. But if you go through the transcript, and I'm happy to do that, we start at page 56 where the court has started with the question of competency. On page 56 alone, Mr. Taylor interrupts the court twice. We get to page 57, and Mr. Taylor has said to him, I don't understand the law. I would ask this court to deal with me commonly so I can understand the law. And the court goes on and says, this is what happens, though. The procedure is you have to have some knowledge of the rules or understanding and willingness to follow the rules. And is that really the law, that he has to show an understanding of the law? What's your best case for that proposition? I thought specifically that is not. I may have misspoken, Your Honor. It's that he has to understand that there's rules of procedure and that I'm not going to be telling you what the law is. I have to understand the consequences of his self-representation. Isn't that what Pepper's required? That's correct, Your Honor. He understands the consequences of his self-representation. Doesn't the court have the obligation to let him do that under Ferretta? He does. But in this case, and I did misspeak, the court says to him, I'm going to explain to you that I can't answer your questions. It's not the role of the judge to answer your questions. And that goes through on page 58. But that's not what the judge is supposed to be concerned with. The judge is supposed to ask him if he understands the consequences of his self-representation. That's true, Your Honor. But in this instance, the way Mr. Taylor started the exchange with the judge, the question is, or what has come up is, I don't understand the law. That's what he says on page 56. But he's allowed to not understand the law and still represent himself as long as he understands the consequences. And what case do you have for the proposition that if a defendant shows that he really doesn't understand the law, his right of self-representation goes away? Well, it's not the law so much, Your Honor, is that he has to understand that he has to follow rules, the rules that the court sets forward. And that's what happened here. All right, well, what's your best case for saying if the defendant doesn't understand the rules of the court, that his right of self-representation goes away? It's not as much the understanding, but the willingness to follow them. Okay, but what's your best case for that proposition, that his right of self-representation falls away if he shows that he's not willing to follow the rules? And I don't know that we have a sufficient showing here. Well, I think that the overarching case that we need to look at is Peppers. But there is no particular case that says this is the binary point at which a court can say you're not going to be allowed to go pro se. Did Judge Sircone at all engage with the factors that Peppers said you really need to look at, i.e., does he understand the consequences of his self-representation? Well, as we put forth in our 28J letter, we went through all the Peppers factors. But I believe that the actual colloquy he did, he said to him, because Mr. Taylor brings it up again the second time, I will ask questions if I don't understand anything. And the court says, I'm not here to answer your questions. I'm not here to represent you. It's not my job. So don't think of it that way. And then he continues to explain. And Mr. Taylor says again, I want to know if the court can deal with me commonly. And clearly he's not following what Judge Sircone is saying. But Judge Sircone should have said, well, you know, I'm not really interested in that, but I need to understand whether you realize that there is, you know, the possibility of 360 months here that if you do not have a lawyer, there are going to be principles of evidence you're not going to understand. You're not going to have the right of appeal unless I make an error. We're not going to have a do-over. And the consequences. But did Sircone ever engage with that inquiry? You're correct, Your Honor. He did not. And doesn't Peppers say he has to? Well, Peppers doesn't say that you have to in every instance where we have facts like this. First of all, the defendant's argument on appeal is the court made the wrong analysis on knowing involuntary with regard to the court's estimate of the value or the merit of the defendant's defense. But Peppers tells us that each case has to be taken on the circumstances and facts in the presentation of each case. Okay. All right. So what are the circumstances here that would excuse Judge Sircone from doing what Peppers said you need to do? Well, I think we've started with one, which is the defendant repeatedly saying, I want to be dealt with commonly. And the court's saying, you know, whatever you mean by that, I cannot answer your questions. That's not my job. That's not how the courtroom proceeds. All right. Well, that's a statement. That's not probing the defendant's understanding of consequences, is it? Well, I appreciate your question, Your Honor. But I would draw a distinction between I believe it's the Stubbs case where it was very clear that the judge and the defendant were not communicating with one another. The defendant was saying, I want to put in, you know, I want to testify. I want to say these things. And Judge Ambrose was saying, you can't argue evidence that's not been admitted to the record without actually saying to the defendant, you are not going to be able just to willy-nilly put items into evidence. We have rules you have to follow. So there was a clear disconnect. I don't read this as being the same way because as it goes forward, the court says to him, you know, I don't know what more I can tell you. I can't give you a mini course in criminal law. And then the court concludes that, you know what, I'm going to find that you're competent. But let's take a break and we'll go on to the rest of the analysis, at which point, you know, the smart thing for Mr. Taylor to have done would have been to say, okay, let's do that. The smart thing? But does he have to be the smartest guy? I mean, isn't the fundamental question whether there's enough of a record here to support the conclusion that Taylor would not or could not conform his behavior to courtroom protocol? You're correct, Your Honor, and I think this record does support that. Well, then if that's the big issue we've got to deal with, you know, you characterize him as being, you know, somehow disrespectful or obstreperous. But here at the podium today, you've acknowledged he wasn't disruptive. There wasn't a record that the guy was disruptive. He was spouting the nonsense, the sovereign citizen nonsense. But as Ms. Pietropalo just pointed out, you know, once you got past some of his stuff, he's asking questions about, he's starting to make points that have to deal with, yeah, the substance, like witnesses that I would call, probable cause, et cetera. How is there enough here for Judge Sircone to say, well, you just can't do this. It's clear that this is going to be a complete carnival. Isn't there, does the judge need to do more? Maybe this is a better way to ask it. If we were to say this is okay, how would we avoid sending a message to district court judges that, you know what, we all know this sovereign citizen stuff is crazy, so just don't let him do it, period. Your Honor, our position is that this record can be read in a way that doesn't turn as much on the question of his defense and the merits or demerits of it. Our position is if you start with the beginning of the colloquy, he twice interrupts the judge. He repeatedly says, I want to be spoken to commonly. I want you to explain things to me. The judge says that's not my role. The judge says, okay, I'm going to rule you competent. Let's take a break. The defendant immediately says, hey, wait a minute, I'm not done here, Mr. Saccone, and continues to ask questions. The judge says to him, this is not how it works in the sense that I have not ruled on your motion. You have a lawyer. I'm not going to let you and your lawyer double team the government or double team the system. Yeah, we've read the transcript, so the question that I'm putting to you is, if this is enough, right, if this isn't premature, as the defender's office is asserting it is, if this is enough, how would we write a decision that would not make district court judges think, you can just pull the trigger pretty quick here because this takes just a few moments in the courtroom. I mean, it's what, like five, six pages of transcript? It's not like we're looking at an hour and a half of wrestling with the guy. It happens pretty quickly. How do we avoid, I mean, I understand we want the courts to have control of their courtroom. We don't want to make district judges offenders for a word, but how would we write this decision and not send a wrong message? I think the first thing to start with would be that the presumption is against waiver of the Sixth Amendment right and that when you are looking at that, as Peppers makes very clear, there's a very serious role for the district judge. They have to be sufficiently satisfied that on these facts and these circumstances that they are able to make a decision. Indeed, and that's the argument that we're getting from the other side is he didn't do that. He touched some things in sort of a lecture format, but he didn't ask and probe and work with the defendant to make that all clear, and that's the problem. That's the argument I hear them making. Why are they wrong? Well, I have two answers to that. One is there's no decision that I know of that says when a defendant's request to go pro se is denied, there's a certain amount of information that the judge must put on the record. No, but it's in the course of determining whether to deny it, there has to be a record of his actually inquiring and making sure. Your argument, you haven't argued that any conduct of his was disruptive or that his right was outweighed. You're saying that he lacked an appreciation of, that the district court demonstrated that Taylor lacked an appreciation of the importance of counsel and the consequences of self-representation. And I look at this record, and I don't see any inquiry that is aimed at the district court's ability to determine that or the district court's concern for that. And lacking that, I think there's a problem under Peppers. I appreciate there's no discrete question, but I think the response is, is that that information can come from a fulsome discussion. It does not have to be, I'm moving on to question one of Peppers. But if the Taylor says, you know, deal with me commonly, does that really go to his appreciation of the importance of counsel or the consequences of self-representation? No, it calls, it says, I'm going to ask you, Your Honor, to help me a little bit here. And quite frankly, I think if defendants are allowed to represent themselves, there will be courtroom proceedings where the defendant will say, I'm not really, you know, sure where I'm going here. And the judge will say, well, we'll either take a recess and you can do some research, or I'll appoint counsel for you, what would you like? But I've not seen it as a basis for saying, okay, you do not have a right of self-representation. Well, I think it's important to remember here that we have that discussion about what it means to ask for help in the judge's role. We then get to the point where, you know, after this defendant has interjected himself into the conversation, he basically says, we're not going to take a break because I want an answer to my questions. And that's telling the court something about his ability to follow court procedures. Really, the judge could have followed up and said, well, you know, I can't do this. But if you had a lawyer, you would be able to do this. But you're not going to be able to, you know, hear the consequences, et cetera, et cetera. Do you realize you're going to have to cross-examine witnesses, which you've never done? Rules of evidence are going to have to be complied with. I mean, that's your typical, and it's just a matter of degree as to whether. And that's correct. And our position is that if a judge obtains, through a colloquy and discussion, enough information to believe that this defendant cannot appreciate that he has to follow rules, he cannot consistently repost questions and not expect the same answer, and then try to act as a lawyer when he's not yet been granted pro se status, that that's an instance in which a court can say to itself, I don't need to go through Peppers all the way. I have enough information now. And we believe that's exactly what happened here. What's your best case for that proposition? Well, actually, there isn't very much writing on that. I do think if you look at Peppers, though, Peppers tells us that it's a sufficiency. It's just a sufficient satisfaction on part of the district court. It's not a very high level. And that it depends on the facts and circumstances of each case, and as well as the demeanor of the defendant. I mean, there's the... Isn't Ms. Pitropalo really on the right path when she says it's a rule of reason? A rule of reason, Your Honor? A rule of reason for a judge to decide when you've crossed that line. And there's, you know, at some point, and if it's a rule of reason, don't you have to go through and touch all the relevant bases in order to make a decision as to whether it is reasonable or not reasonable to allow someone to represent himself at trial? Well, I would agree that the rule of reason sounds fair. You're the judge now. You're writing this opinion. What would you do? I would rely on... I'm not talking about the result. How would you analyze it? Basically the same way I presented it, Your Honor, that he was unable to follow the rules of the courtroom, unable to follow directions from the judge as evidenced by his repeated asking of the same question. And did the judge ever say to him, do you understand if you continue to do that, it's going to be a no for you representing yourself because you've shown that you can't do that? But it seems as what happened here is the judge is saying, I need to go take a look at some of the case law. He gets off the bench. As he starts to get off the bench, Mr. Taylor acts out, asks some questions, and the judge just, you know, as we all could, it's human, kind of just blows up and says, that's enough. I've had enough. And you just look at the transcript, and it's just saying, it's over. I'm not going any further. You're out of here. You're not representing yourself. I would agree with that, Your Honor, except for the court has explained to the defendant, you cannot do this properly. You have not been granted pro se status. You still have a lawyer. I'm not going to entertain these issues that you are bringing up. And he brings it up, you know, different issues repeatedly. It's true he didn't give him that warning of, you better stop here or your motion is at risk. But I don't know that there's any requirement that he say that. With the high bar that Ferretta sets for what needs to be done by judges here, it seems as if Ms. Petropalo is making a good point that you acted prematurely. Don't act prematurely. Follow, go through, touch the bases so that you've given yourself a good record. If you make a decision that this person should not represent himself. I appreciate what you're saying, but our position is actually slightly different in that a judge has the authority, based on their experience, based on the demeanor of the defendant in the courtroom, and its understanding of the activities that have taken place, that no matter what the answer is to those questions, the outcome is going to be the same. And that's our position. Based on your response to the questions asked by Judge Rendell repeatedly, there isn't a whole lot of case law here that supports that position. That's true, Your Honor. There's not actually a whole lot of case law that develops the part of Peppers at pages 130 and 131 about what the judge's role is. It sets it out there, but there isn't much out there about what the record must reflect with regard to that. Instead, the record, the case law is more what needs to be asked of the defendant to make sure that we can believe that he knowingly, intelligently made the waiver or the decision with regard to his Sixth Amendment rights. So I would agree with you that there's not much that helps flesh out what we expect of a district court in this circumstance. All right. Thank you very much. Thank you. We'll get you back on rebuttal here. Counsel, can you take us where your colleague left off, that there's not a lot of case law? Yes, Your Honor. That's actually where I did want to start. The two cases that this court has ruled that a district court conducted and denied someone the right to self-representation based on an inadequate attitude are Peppers and Buell v. Cooksey. We already talked about Peppers. The court relied on his view of the defendant's legal abilities. Buell is similar. The court didn't do the full colloquy and made a determination that the defendant was waiving because he believed his counsel was ineffective. Peppers puts the burden and Freda puts the burden on the district court to determine that the waiver is voluntary. And the district court runs the risk of not creating a sufficient record, not having a record upon which to base a denial or a grant of the right to proceed pro se if he doesn't conduct the full colloquy. And as I said, it's possible— The court can conclude that a defendant who intends nothing more than disruption and delay is not actually tendering a knowing and voluntary waiver. In other words, if the court sees the behavior and says, you're just not willing to do it, you're not willing to follow the basics here, they can say, the judge has the discretion to say, I don't accept that this is a knowing and voluntary waiver. There would have to be a finding of fact on the record, Your Honor, to that end, and there isn't one here. Well, when you say there isn't a finding of fact on here, there's—I mean, I can cite you a whole series of things, which I grant you might be interpreted in more than one way. But where the court says, the filings you've made send up a red flag, things you're saying borderline on legal competency, the argument's so bizarre it makes me think you might not be legally competent. Maybe you're doing it in your mind. But I'm not going to allow you to turn this case into some strange journey. I'm not going to get into this with you. It's bizarre. Your argument is we can't have criminal laws, we can't prosecute individuals who violate the rules of our society. Your arguments make no sense. They're convoluted. They're a waste of time. I'm not going to turn this proceeding upside down. Now, you can make the pitch that, well, he's talking about the substance of the argument, the guy's argument, but he's also seems to be saying this is just so utterly frivolous that this is going to be—yeah, this is going to be a clown show and a wreck if I let you represent yourself. Why isn't that—why doesn't that constitute a finding on the record that I'm looking at this, I'm seeing what you wrote before, I'm watching your behavior right now, and that's, as in Buell, a circumstance where you're not tendering a voluntary and knowing waiver. You're just not. Right. You—the court made a specific finding. Your arguments make no sense. I'm not going to let you represent yourself. So it's based on the merits of the argument. It wasn't based on— You can read it that way. I'm not arguing that you can't read it that way. But this is an abuse of discretion standard. I mean, don't we— No, Your Honor. Because with the lens on of saying whether the judge—let me step back. The standard here is plenary as to whether the legal— a sufficient showing has been made on the Sixth Amendment. I give you that. But isn't there some discretion? I mean, don't we owe some deference to what the judge who's in the courtroom sees, which we can't see on this record? Don't we owe some deference as we're reading these words to say, you know, you could read it that way? But you could also read this, easily read this, as the court's saying, this is just bizarre, and I can't have—and it will, quote, turn the proceedings upside down. That's a statement not about the legal merit. But it is a statement about this will turn everything into a circus and derail the proceedings. The district court, if that's what he did, made a preemptive ruling. He didn't conduct enough of an inquiry to determine whether that really would happen. And a preemptive anticipatory ruling is not proper under Ferretta. If I could give one more case because Judge Randall asked, I point you to Government of Virgin Islands v. Charles, 1995 case out of this court. In that case, it's not like it was almost the same, but the defendant said something similar, I don't understand law. He basically said to the judge, I don't know what I don't know. And the judge made clear, this court made clear, the purpose of the Ferretta inquiry isn't to determine whether you understand law. It's to determine that you're aware of the risks of proceeding when you don't understand the law. And the idea that a defendant wants to advance a frivolous, absurd argument is sort of the price that we pay to allow someone to represent themselves. Is it irrelevant? The position the defender's office is taking is, it doesn't matter how bizarre or frivolous the argument is, you have to let them take it into court and you have to let them articulate it in front of the jury. Again, that's kind of premature. This was a threshold jurisdictional challenge that the defendant made. Except that I don't think it's premature, okay? And to answer the question, are you saying that a district court judge cannot ever say, that is so frivolous, so out of line, I'm just not letting you put that in front of the jury? Let them do it. Ferretta says if you're going in with your eyes open, you have the right basically to crash and burn. If he's being disruptive, Your Honor, that's a different question. Seriously obstructionist. Does it become disruptive? Does taking legally frivolous positions become disruptive? Making a frivolous legal argument would not be disruptive. When Illinois v. Allen is talking about disruptive, they're talking about the defendant actually doing things like shouting, threatening witnesses that are on the witness stand. That's very different. The judge couldn't say in the courtroom at trial, look, that's a legally irrelevant proposition. The jury's instructed not to pay attention to it. I'll instruct you on the law. Don't listen to that. Now go on. And the person continues to do it. That doesn't become disruptive? The legal positions don't become disruptive? That's an excellent point, Your Honor. If the judge rules that's irrelevant, move on, and you don't move on. That's being disruptive. And you have to wait until trial to do it. You can't look at him in the pretrial hearing, see him doing it in front of you in the pretrial ruling, and say you don't have the capacity to restrain yourself. I know you're using a hypothetical that you're saying he's seeing it because that wasn't on this record. Yes, stick with me on the hypothetical. Yes. I do believe, Your Honor, again, depending on the conduct, if the conduct is so seriously disruptive, I don't know, FREDA doesn't anticipate that kind of thing. You have to warn the defendant of the consequences. You could waive your right to proceed per se in the context of the colloquy by making clear that I don't care what the rules of relevance are. I'm going to disregard them, Your Honor. That's a different story. Did the judge make any findings of fact that led to his decision? Did the judge make any findings of fact that led to his decision? The one thing he said, Your Honor, at 64 and 65, he said I'm not going to let you represent yourself because your arguments make no sense. I mean, that's essentially he didn't issue an opinion. That's not really a finding of fact, is it? It's him basing his decision. That was a softball. No, no. There certainly wasn't a finding of fact that Mr. Taylor was going to be disruptive, which is what the government is proposing. Is the language I'm not going to let you turn these proceedings upside down a finding that I am seeing you turning the proceedings upside down and I'm not going to let you do it at trial? It's an anticipatory ruling that's improper and also not based in the facts. Got it. Thank you, Your Honor. Thank you to both counsel for a very well presented argument, and we'll take the matter under advisement and call.